Can you call the next? Thank you. We've emptied out your offices today, right? Would you both just, you can do it from sitting, just tell us your names. My name is Jonathan. I'm the assistant state attorney for Imbeski County Council of People. We both know this microphone doesn't amplify, it only records, so please keep your voices up. We've got a full courtroom. Would the appellant like to keep any time for rebuttal? Yes, there's three minutes for rebuttal. Okay. You both have 20 minutes. You do not need to use it all, but you're welcome to. Whenever you're ready. May it please the Court. Counsel. The jurors in Kate O'Reilly's case had a challenging task, one which was made more difficult, because the Court prevented them from hearing key evidence on the most important element in this case, permitted the State to present highly prejudicial evidence that had very little to do with the incident between Mr. Ware and Mr. McDowell, and then refused to answer a question that they posed on an explicit point of law that the judge had a duty to answer. It's little wonder, then, that the jury in this case returned inconsistent verdicts, considering how close the evidence was on what the true question in this case was. What was Mr. Ware's mental state when the gun that killed Sidney McDowell went off? Did Mr. Ware fire that gun intentionally or knowingly? Did he do so accidentally? Or was he acting in self-defense, albeit unreasonably? To answer this question, the jury made a complete picture of the incident on Laughlin and what happened in those fatal seconds right before this gun went off. But when counsel sought to use Marshawn Perry's video statement both as impeachment evidence and as substantive evidence, these two small clips, the Court erred when it wouldn't let counsel do so. The Court further erred when the State was allowed to present highly prejudicial but very minimal probative evidence that allowed them to paint Mr. Ware as some sort of drug tax-collecting game lord. If we could go back to the tapes. Now, the testimony on the tapes was presented to the jury. Is that correct? The tapes themselves were not presented. The tapes were not, but the testimony was. It's my understanding the problem was that there were arm motions or something on the tapes that were not presented, but the actual words that were on the tapes, the jury heard those. The jury heard that Mr. Perry did admit to making the statements to investigators. Right. They weren't offered via like a transcript or through like a detective or something like that. So we're talking about both the words and the gestures, but the gestures were something that counsel emphasized and why it's important that the jury was able to see these. But he admitted to the verbatim words. Mr. Petty admitted on cross to the verbatim words that appeared in the video clip. He admitted to making those statements to investigators, yes. Now, but what the record shows what these gestures were that he made in court versus what he made on the tapes. The record admittedly is not terribly clear because when Mr. Petty was testifying, there wasn't a lot of detail made either by the trial court or by the attorney that was asking the questions to clarify for the record. But when counsel sought to impeach it as part of her offer of proof, she highlighted the fact that the gestures were different. From our position, that's enough of an offer of proof to highlight the fact that she wanted to show something, even if the court record doesn't explain exactly what it was, that it was different enough in her mind that the jury needed to see this, particularly considering the importance of that moment, since this is the moment that these two men are engaged in combat on the street, and what was happening there was moving so fast that every little difference in the gesture was still important for both impeachment and substantive evidence. So although nobody described in any detail on the record counsel's offer of proof, I think covers that enough to highlight that this was different enough to be impeachment. As the law is pretty clear on this, it doesn't have to be completely diametrically opposed to be impeachment. If there are subtle differences, that's enough for the jury to consider it. I was a little confused by your brief. Was she seeking to introduce them in your case in chief or was she seeking to play them a closing argument or both? She indicated from my reading of the record, she indicated both, that she was going to lay the requisite foundation in her case in chief to present them to the jury and then was going to argue them substantively. Once they were in evidence, she was basically going to say this is used for impeachment, but I'm also going to use it substantively in my closing argument after she had introduced it to the detective. Okay. The reason that these statements were so important is because Mr. Petty was this case's most important witness. Mr. Petty, there were three people that basically testified about the events, and they were all slightly different. Mr. Petty was the one detached witness. He was up the street. He didn't have any involvement in the original altercation, and he didn't know the parties outside of just knowing them casually on the block. He testified in the most detail from start to finish. The other people who testified, Mr. Barnett and Mr. Washington, their version of events were not as detailed. Mr. Barnett talked about the men's retouching hand. Mr. Barnett said that the McDowell, the victim, swatted the gun. The gun went off. Mr. Washington described there that they were arguing. Mr. Warren and Mr. McDowell were arguing that they were tussling over the gun. He also told investigators they were wrestling and clutching the gun. But Mr. Petty talked in a great more detail because he was standing farther back and had seen the incident from start to finish. That's why it was so important that counsel wanted to impeach him on these statements to highlight that his memory may have shifted in the time that he was testifying to when he told investigators this case. I'd like to remind, it's important to keep in mind that nobody came forward immediately and talked about this case. So as memory is beginning to fade, this video recording is the freshest capture of that memory, of that entire incident, what Mr. Petty remembers seeing in that moment. And it was important that counsel be allowed to argue this both as impeachment but also as substantive evidence since all of it comes down to that moment. Even on the tapes, Mr. Petty doesn't say that the victim actually had control of the gun. I mean, Mr. Petty's description on those tapes is not inconsistent, is it, with the jury's verdict? I think that's stretching it a little too far. Show me how it is inconsistent, I guess is the question. Well, I guess the argument, the crux of this case comes down to that mental state. If the jury believed that this was an accidental shooting, which is suggested by the fact that they found the state didn't prove the firearm enhancement and that Mr. Ware accidentally, like the gun went off accidentally or Mr. Ware accidentally fired the gun in the struggle, then Mr. Petty's statement kind of does support that because Mr. Petty does say that the men are grabbing and pulling at each other, are fighting with their hands, and that at some point there's a moment of separation. Now, that moment of separation could be read either way. Arguably, it's possible that the jury found this that way, that that moment of separation, in that moment Kate O'Rear developed either the intent or knowing and committed first-degree murder. But it also could be arguably said that it reflects their finding in the special interrogatory that Mr. Ware didn't personally discharge the firearm which killed Mr. McDowell. I think the inconsistent verdicts really highlight just how important this moment is and why denying the jury and denying counsel the opportunity to use this as substantive and impeachment evidence was such a prejudicial error because we have this weird, diametrically inconsistent verdicts that logically don't harmonize with each other. If the special interrogatory had come back that the state had proven it, I think that my argument would hold a lot less weight and I think you'd be right. But we don't have that here. The jury clearly struggled over this and that's why this makes it that much more important with what the trial court did here. But in terms of the issue of the video, that is clearly viewed under abusive discussion, correct? Of course. As with the question presented to the jury and as with the other crimes evidence. So I'd like to hear more about the argument that you're starting to go into now. That's the most important argument to me anyway. So if you want to get to the special interrogatory and the verdict and the inconsistency, I'd like to discuss that. Well, there's a couple of different arguments inside of that and I want to address the jury question first just to highlight that and then we'll go into the inconsistent verdicts and how that can stand. It's the elephant in the room for me. Apparently it was the elephant in the jury's room as well because they were clearly confused about where to go and that's why they asked this question. I want to highlight, you know, it is an abusive discretion standard for the jury question, for all this other stuff. But the case law is equally clear when it comes to jury questions. If the jury poses an explicit question on a point of law, the judge has a duty to answer it. Jurors are entitled. That's not my words. That's the word of the case law. And so although it's an abusive discretion in the jury question, it seems to hold that when we're talking about a very specific question on a point of law, the discretion of the trial court is far more limited than it normally would if the jury was asking an open-ended question. Well, frequently trial courts say, keep deliberating, you know, the answers in the instructions. But in this case, wasn't the answer in the instructions, in other words, wasn't it answered correctly and completely by telling them that? I don't think it was, no. Because of the unique facts of this case, this jury was asked to sort through first-degree murder, both forms of second-degree murder, and involuntary. And if you look at the second-degree murder, if you look at the first-degree murder IPI, it's a standard IPI, and it's supposed to walk the jury through everything. But when you keep adding charges to it and add more elements that the jury has to sort through, for a layperson juror, it can undoubtedly become more confusing, which is exactly why they asked the question that they asked. This was a very specific question, and I think that that undercuts the argument that the answer is in the question. It was in the instructions, sorry. If the jury had asked a far broader question, and, you know, it didn't seem like there was a clear answer one way or the other, then maybe you're not really sure if they've read the instructions carefully. But, and I want to highlight one more thing. That question came after the jury had been deliberating for many hours. It came, I believe, at 8.15 p.m. on the first day of deliberations. So they'd been in there for a while, and had been reading this, and still saw guidance. I don't think the answer is clear in there. Just by the nature of it, jury questions, a lot of it is based on conjecture as to what they were thinking. Sometimes they might have one juror that has this question, and just to shut them up, the other 11 know it. Just to shut them, right? I mean, I'm just saying, no, it could be, or it could be six to six, or it could be all of them don't understand. We never know. We don't, but Mr. Ware has a right to have a unanimous jury verdict, and that implies that if one juror is confused, that we can't have confidence that this is free of prejudice. I realize that the law says a little differently, but that's the question we have in this case. But if the answer is complete and correct, then that's the answer. But the answer isn't clear in the instruction, and if one juror is confused, we cannot be sure that they properly deliberated in this case, particularly, again, when we come to the inconsistent verdict, because the jury didn't follow the instructions. Powell itself says we get inconsistent verdicts when juries don't follow the instructions. And we have an inconsistent verdict, so the jury didn't understand the instructions. I realize that we have to engage in a bit of speculation because we don't have any access to the black box that is the jury's room. But in this case, we can presume with some confidence that there is some sort of something went wrong along the way, and that's the prejudice that undermines the confidence in this verdict. Before you get, and I want you to get to Justice Walker's question about the inconsistent verdict, but the question, as I understood from the jury, was if we select the charge of second-degree murder, do we have to consider the additional gun charges, or does that only apply to murder one? That was the question, correct? I think it was not. It was something along those lines. The charge was if we select the charge of second-degree murder. Yes. And we never selected the charge of second-degree murder, so I'm confused as to how you're prejudiced in this case by the refusal to answer this question, or how you could possibly be prejudiced, and I agree with you, you can't know. But just to speculate, how could you be prejudiced? Just to speculate. The jury, the instructions kind of lay out the deliberative path, and I kind of talk about this in the reply brief. You know, the jury starts at the beginning, and they start to work through the jury instructions. Right. And there are many different paths that they can choose that are proper. If the instructions are not clear, and the jury does not realize that there is a path that they can follow, then that's the prejudice, because if the jury, and I'll try to add some more concrete terms to that, if the jury mistakenly believed that it needed to consider the firearm enhancement before it could go to second-degree murder, it is now decided that it cannot follow a path, even though it could follow and walk that path to a proper verdict. And that's why, in this case, when they reached out for this very specific little bit of guidance, the trial judge should have answered, and abused his discretion not answering it, by simply saying, no, you can still walk that way, you can still go that way, it permits you to. See, I don't agree with you. I don't think that the trial court was required to answer the question. And I'd like to get to the elephant in the room. Didn't mean to ignore it. So the inconsistent verdicts, and I understand the case that is against me in all of that. I think the argument is relatively straightforward in this case, that the Powell and Jones rule should not apply to the special interrogatory in this case, simply because the interrogatory, the firearm enhancement, can't stand on its own. Powell basically says that we have separate counts, and when they're logically inconsistent, that they could stand on their own, one of them doesn't knock out the other one. And that the first degree murder charge stands independently, and thus, even though the fact that the jury found a factual element that is necessary inside of the first degree murder charge wasn't proven by the state, we're still not going to have any problems with the first degree murder. Now, Alexander says what it says, but the ask for relief in Alexander is different. In that case, the defendant, from my understanding, was simply asking for a straight, not guilty, on the case that the state hadn't proven. In this case, it's slightly different, because the verdict reflects what the jury truly, the verdict should reflect what the jury truly found as the fact finders. The jury, as we know, are the fact finders. They determine the facts, and then apply the laws given it to them. In this case, one of the key facts that they determined was that Mr. Ware did not personally discharge the firearm. And implicit in that is that Mr. Ware didn't pull the trigger. He didn't commit the act of pulling the trigger. Now, if he can't have committed the act, then he can't have committed, if he didn't commit the act, then who, in essence, committed the act? Which, during the struggle over the gun, the gun went off, and we're not sure who committed it, who pulled the trigger. Exactly. And in that case, it appears that, and I consider this, Mr. Ware was reckless for sticking a gun in Mr. McDowell's face. That is a reckless act. That is involuntary manslaughter. And that is what the jury's verdict actually reflects in this case. The firearm enhancement is a very unique creature inside of Illinois law in the way that it's presented to the jury and the way that it's charged. And in this particular case, considering the facts and considering the way the jury verdicts came back, the only logical conclusion that the jury found that Mr. Ware didn't intend to knowingly commit the act which caused Mr. McDowell's death. It was an involuntary manslaughter. The Powell and Jones rule deal with different charges. And as I talk about in my brief, tracing it back to where it originated and done, the idea was that these things could stand independently. These separate charges could stand independently. So if a jury comes back inconsistently, we don't really have a problem because hypothetically the jury could have found that in two separate proceedings, sorry, one jury could have found guilty, one jury could have found not guilty. In this case, the firearm enhancement can never stand on its own. You can't go to a jury and say, well, did this person personally discharge? The firearm enhancement is, you cannot clear the firearm enhancement from first-degree murder. And when it's joined in the manner that it's charged in this case, the state has decided that that's how they're going to proceed. And if the jury comes back inconsistently. The enhancement only applies after a conviction. Pardon me? The enhancement only applies once there's been a conviction. Yes. Therefore, it can't stand on its own. That's generally what I'm trying to get at. Is there any significance in your mind to the fact that the jury was polled and said that they did vote for the enhancement, and then when it finally looked at the paper it turned out that they didn't? Is there any significance to that? I think it highlights the mass amount of confusion that this jury had at the end. It's not clear on the record exactly what happened at the end of this case. Am I right that they were polled and said that? They were polled. And the record's a little unclear. So the verdicts are published by the clerk, and the clerk says wrongly that it was proven. The jury was polled, and everybody said, yes, that was their verdict. There's nothing in the record of that day. However, later on in the case, the assistant state's attorney in the courtroom noted something on the record that there had been some sort of commotion in the room, that they had declared, the jury had been dismissed, and then only then was the improper publishing and the inconsistency discovered. That doesn't appear in the record anywhere on the day the jury was read. It's not clear. They talk about it later. So it's not clear exactly what happened. Nobody made a contemporaneous record about what actually happened inside of there. But it really does highlight the fact that the jury was very confused and probably very tired at the end of this case, and that may highlight some of the inconsistencies here. And whereas I've used the number of my time. Yeah. I think I have another question. Go ahead. The state argues that Simmons, and I guess it's pronounced as a Gerces, or the case that you cite on page 50 of your brief. Page 5-0. Yeah. The state argues basically that that case only, that situation only applies in civil cases. Page 5-0. That the special interrogatory would not control the criminal case. And I struggle with that, and I want to hear from you, because in a civil case, the burden, of course, is just preponderance of the evidence. In a criminal case, we're talking about guilt beyond a reasonable doubt. And where there's inconsistencies, I don't know how the state can stand on an argument that, you know, if there's inconsistencies in a criminal case, I mean, in a civil case, special interrogatory controls and the doctor would be found not liable. But in a, and now we have this situation in a criminal case to say that we're going to find someone guilty where there's an inconsistency like that. I struggle with that. So tell me what are the arguments that should be made? Well, a couple of acknowledgments right away. The special interrogatory rule is kind of a safeguard, from my understanding in the civil world. It's a check on the general verdict. It's a check on the general verdict to make sure that the jury has looked at everything and kind of discussed everything. Absolutely. The way that this is structured mirrors that nearly exactly. And again, the firearm enhancement in murder is structured very differently than the firearm enhancement in a lot of other places in the code. You know, if you look at armed robbery with a firearm, which this court has talked about a lot in the past, armed robbery with a firearm, that firearm element is rolled into it as well. So it's not sort of this standalone special interrogatory. So because of the unique way that this is structured, it closely mirrors that. Now, I will admit there is no provision in the criminal code that mirrors the civil code's provision when it comes to dealing with special interrogatories. That's a provision in the civil code, and I believe that the Reed case recognized that, although I may be getting that wrong. It's based on case law. It is based on case law. It's based on the Code of Civil Procedure, which isn't that correct? The Code of Civil Procedure says in a special interrogatory, if it's inconsistent with the verdict, prevails, controls. And we don't have that in the criminal code. That's not in the criminal code, no. But, again, you look at the way that this operates. This is sort of a check on this particular way. And, basically, the state chose to proceed on this particular way. They chose to add this firearm enhancement, and, frankly, that was their decision. It is their discretion to add these sorts of questions to the jury. And in structuring it in such a way, it mirrors that special interrogatory in the civil world, whereas you have something that's completely irreconcilable, but it's not a stand-alone count like you would have in Jones and Powell and those lines of inconsistent cases. So because this is unique from those cases, my argument is that it is more akin to that special interrogatory and that the court should treat it as a special interrogatory. That knocks out the intent and the key element in first-degree murder, if that adequately explains the logic of that argument. I know I'm running past my time, so I will, unless there are any further questions, I'll set the balance of my time for rebuttal. Thank you. Thank you. May it please the Court again, Assistant State's Attorney Brian Wibitzki, on behalf of the people. All of the defendants' arguments are completely wrong. I'd like to start off with the Assistant State's, which I think is not an elephant in the room, and here's why. The firearm enhancement is not designed to work like a special interrogatory. The special interrogatory tests the general verdict in the civil case, right, to see if those elements are proven. The firearm enhancement is required under Apprendi because it raises the sentence that the defendant could face if the jury finds that. This is something that Alexander points out, actually. The elements of first-degree murder do not require a finding that the defendant personally discharged a firearm proximately causing death. That is, in the Code of Corrections, something that must be found by the jury if the defendant is going to have, in addition to the ordinary 20 to 40-year sentence for first-degree murder, an enhancement of 25 up to natural life. So under Apprendi, that has to be put to the jury. Since it's not part of first-degree murder, it's ordinarily done in a second verdict form. But that doesn't mean that it does or was ever meant to or should be considered anything like a special interrogatory. Do you disagree that there's an inconsistency between finding first-degree murder in this case and finding that he did not personally discharge the firearm that proximately caused the death? Okay. Do you think there is no inconsistency? So there is a legal inconsistency between what's basically a finding of the jury on the first-degree murder and finding that the allegation was not proven, which is in form just like the jury making a finding on one charge and an acquittal on the other. And this is why this case is in law. But you said that's not the same because the enhancement can't stand alone. Counsel's argument is based on essentially misreading of Paul. So Paul takes the rule in Dunn. And what happened in Dunn is we had this defendant who was convicted of selling intoxicating beverages and creating a nuisance but wasn't found on possession or the selling. Which was a separate charge. Right. Those were separate charges. And so Justice Holmes gives us this opinion. It's based on these two different rationales. The first rationale is, well, those could have been brought separately. And if that was the case, then the defendant wouldn't have been able to plead rest judicata based on one finding. And that's why it wasn't a violation of due process. But then Holmes goes on to give us the second line of reasoning, which is, well, maybe what happened was the jury just exercised lenity. They found this defendant guilty, but they didn't want to give him these three convictions for something they didn't think that was merited. And so they exercised a power which they didn't have but which they were predisposed through their lenity to exercise. And that line of reasoning, that second line of reasoning, is what really informs Paul. Because remember what happened in Paul then. The Ninth Circuit basically made the same mistake the defendant's making here today. The Ninth Circuit said when you have a defendant who's convicted of a compound and a predicate offense, in Paul it was conspiracy through the use of telephone communications, and the predicate was conspiracy. They found on the compound but not on the predicate. And so what the Ninth Circuit in Paul says was, well, the finding on the predicate, that the defendant wasn't guilty, must really be a finding of the sufficiency of the evidence as to the compound. And Paul said, no, that's not right. That's not the sort of analysis we engage in. We take that second line of reasoning in Dunn, and we say the jury may have misunderstood the instructions. They may have exercised lenity. They may have decided to reach a compromise by finding on one but not finding on another, because that's the way the jury should do that. So does that mean the court refused to answer their question? Was that the error that the court made? The court refused to answer their question? No. I think that the court didn't make any error in answering the question by directing the jury to the pattern of instructions, which carefully explains. That's also his idea. I understand. But we certainly believe that with respect to that first issue the defendant raises. Originally the jury was confused. It's just that clearly they were confused. So it could be that they were confused about what this was. It could be that they reached a compromise. It could be lenity. It's any of those issues. But when the defendant says that he had the right to a unanimous verdict and that's what he kind of, how he frames this issue, the real issue is the defendant has to show error in order to warrant a new trial, and he hasn't shown error for any of the issues. I don't think he approached it with any of these issues. So with respect to that first issue, the question was, when you set up the charge of second-degree murder, do we have to consider the additional gun charges that are part of murder one? That was answered in the instructions. So that's why the trial court exercised its discretion properly. Again, another judge may have done something differently. Another judge may have said no. But the judge in this case exercised his discretion properly in directing the juries to those pattern instructions. I would next like to just touch upon the video clips. So what Judge Crane realized in this case was that Marchand Petty basically proved that his own impeachment. He admitted that he made those statements. And so there was no reason to bring in this extra evidence to tell the jury what they already knew. Now, the defendant also points out that there were gestures on this video, and Marchand Petty does make gestures when he's talking about how the defendant held the gun. But the thing is, when counsel says that the records are ambiguous as to what offer proof was made, the record does not say at all how Marchand Petty was holding this gun. So we don't get to the point where we show how if at all it really was inconsistent. But it's substantively admissible. It doesn't need to be inconsistent. It can be admissible substantively, right? There's no hearsay problem under the statute. So under 115.10.1, there does have to be inconsistency. It has to be inconsistent, but it can come in substantively. If there's that kind of inconsistency, again, we just don't have anything in the record that shows some gesture was made that's inconsistent that would get us through the requirements of 115.10.1. But I think the bigger picture is that the basic impeachment in the statements was whether the gun was exposed before or after the tussle. But this is a case where Marchand Petty said the defendant was running after Sidney McDowell with a gun. If it's in his shirt, if it's outside of his shirt, we can see what defendant's intent was that day. When he ran after someone with a gun, put it in his face. And when defendant says that there was a moment of separation, all of the witnesses testified that Sidney McDowell didn't hold the gun himself at most. Burnett said that he searched the top of the gun, but that the gun was in defendant's hands when it discharged. And we have to remember that we have the eyewitness's testimony, but we look at the eyewitness's testimony bearing in mind John Foskamp, the firearms examiner, who also testified that that gun would not discharge if it was merely brushed. The trigger required eight and a half pounds of pressure to squeeze in order for the gun to discharge. The gun's in the defendant's hand when it discharges was the reason for the inference. He pulled the trigger. He did it for whatever reason. It seems like he was purposeful in trying to settle this dispute he had with Sidney McDowell. The jury made the right inference in this case when they found the defendant guilty of first-degree murder. And if there are no further... I do have a question about the admission of the pointing his gun at Washington. How is that not propensity evidence? Because when we admitted it, it was to show his desire to murder. And that's how we argued it. And that's when the jury received the... I'm going to show people I'm the big guy on the block, and people better not mess with me. That's basically what you're saying. So I scare this guy, and then I shoot that guy. Sounds like propensity to me. So the argument was that the defendant was out there collecting the witness described as taxation. Right. He believed that he controlled the block, and he was going to do whatever he wanted on it. And if someone didn't pay up, then he was going to put a gun in their face. And if someone told him what to do, he was going to put a gun to their face and shoot them. It sounds like propensity to me. That's what I'm saying. I don't see the difference. I scare this guy, I shoot this guy, I'm just a bad guy. That's what it sounds like you're trying to do. Evidence of other crimes is necessarily going to involve other criminal conduct. Yes. But the question is whether or not it's offered for any purpose other than propensity. Yes. And in this case, it was offered to show rather than design, as well as to show, as we noted in our brief, the cause of initial conduct as well as the fact that the defendant was the initial aggressor all throughout the events of that day. If the jury didn't know that he was out there pointing a gun in people's faces, if they didn't know that he was the neighborhood enforcer, if that's how he viewed himself, then they may have wondered, why did this fight break out between him and Sidney McDonald, where they ended up in someone being murdered? And again, in closing argument, we pointed to the instruction 3.14, which was tarred in this case, so that the jury would only consider it for those proper purposes. So if there are no further questions, we would ask the court for these reasons and the reasons in our brief to affirm the defendant's conviction for first-degree murder. Thank you. I've been told I'm wrong before. It hasn't stopped me from being wrong. On everything. You're wrong on everything. It still doesn't stop me from being wrong on everything yet again. I'm going to bounce around a little bit very quickly on the propensity. It goes beyond just the tough guy on the street propensity, but it also was a theme of the state's case that this was about drug tax, drug taxation, drug selling, and all of that other stuff. That went far afield. So we're already dealing with some propensity, but then we have all of this other drug stuff that wears in, and that is even more prejudicial, and the probative value keeps going down, particularly on that. I want to highlight that. What about the continuing narrative? The state obviously has the ability to craft that continuing narrative in a far more limited way. Counsel asked when this case was being litigated before trial, counsel said the one thing that I really want to focus on is this drug taxation and all of that underlying stuff. If the state really wanted to present and was concerned about the continuing narrative, they certainly could have limited the scope of that argument and still gotten what they sought after without all of the prejudicial evidence. The probative element of that, the state could have basically used a scalpel where they tried to use a machete. They could have cut the more probative value out of that, presented that to the jury to explain that this wasn't some random occurrence, that there was an incident earlier, without adding all of this tremendously prejudicial information afterwards, and that's where the error in the abuse of discretion was in that case. Everything else added to it, that makes it far more prejudicial than it ever was probative. A couple of things. Counsel talked about the jury has a right to grant lenity, and yeah, they do. They can grant lenity in whatever way that they want to. The jury has a right to have a jury that is properly instructed and understands the law that it is to apply the facts to. The jury is the fact finder, but they have to apply those facts to some law, and Ware has an absolute right that that jury understands the law that they're applying these facts to, and when the entire crux of this case comes down to one fact, the state of mind when Ware's state of mind when the gun goes off, it is important that the jury clearly understand the law on that point, even if they are allowed to grant lenity in any form that they want to. Lastly, discussing the special interrogatory and the firearm enhancement, the state is correct that this is something that has to be presented to the jury under Apprendi as a sentencing enhancement. The jury has got to answer these questions. In other cases, though, when there is a finding that a firearm wasn't used, but it was charged in the case, the original charge doesn't stand. For example, armed robbery with a firearm, if there's a finding that it wasn't a firearm used in the armed robbery, the robbery is reduced down to robbery. It's reduced to a lesser, which is exactly what Ware is asking here today. The state has posed a special condition or special element that is part of the elements of this offense, and now the jury says, nope, you didn't prove that, or the fact finder says, nope, you didn't prove that. It gets reduced. It should be treated the same way. It operates in general the same function. Which actually is my last question. What's the remedy you're asking for? Are you asking for a reduction or are you asking for a new trial? On this specific issue, reduction to involuntary manslaughter, because that is what is reflected. On the inconsistency or on the jury? On the inconsistency. On the jury, on every other issue, there is a sufficiency of evidence argument that that's a straight reversal. In this case, actually that's reducing to involuntary now that I think about it. On issues one, two, and three, it's a new trial. We're manned for a new trial. On issues four and five, it would be a reduction to involuntary manslaughter. If there are no further questions, I thank the Court for its time. Thank you both for a very good argument, and we will take this matter under advisement. Thank you.